IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


UNITED STATES OF AMERICA,                           09-CR-444-BR

                    Plaintiff,                      OPINION AND ORDER

        v.

SUBHASH NAITHANI, MANOJ
KUMAR KOVUMMAL, SACHIN
K. SHARMA, VERLYN CRAIG
PAYTON, and ANTONIO GONZALEZ,

                    Defendants.


**DWIGHT C. HOLTON**
United States Attorney
**JOHN F. DEITS**
**KATHLEEN LOUISE BICKERS**
Assistant United States Attorneys
1000 S.W. Third Ave., Ste 600
Portland, OR 97204
(503) 727-1000
**AMY POTTER**
Assistant United States Attorney
405 E. 8th Ave., Ste 2400
Eugene, OR 97401
(541) 465-4771

                 Attorneys for Plaintiff


1  - OPINION AND ORDER

**NOEL GREFENSON**
Noel Grefenson, P.C.
1415 Liberty Street, S.E.
Salem, OR 97302
(503) 375-4214

       Attorney for Defendant Subhash Naithani

**KARIMBUMKARA JAYARAMAN**
44 N. Second Street, #600
Memphis, TN 38103
(901) 522-8242
**LISA J. LUDWIG**
811 S.W. Naito Pkwy, Ste 500
Portland, OR 97204
(503) 223-557

       Attorneys for Defendant Manoj Kumar Kovummal

**KENNETH RICARDO PERRY**
The Board of Trade Building
310 S.W. 54th Ave., Ste 438
Portland, OR 97204
(503) 248-9882

       Attorney for Defendant Sachin K. Sharma

**STEVEN T. WAX**
Federal Public Defender
**LISA HAY**
Assistant Federal Public Defender
101 S.W. Main St., Ste 1700
Portland, OR 97204
(503) 326-2123

       Attorney for Defendant Verlyn Craig Payton

**MICHELLE LYNNE KOHLER**
Michelle Lynne Kohler, PC
4380 S.W. Macadam, Ste 500
Portland, OR 97239
(503) 219-9300

2  - OPINION AND ORDER

**MICHELLE R. BURROWS**
Michelle R. Burrows, PC
618 N.W. Glisan, Ste 203
Portland, OR 97209
(503) 241-1955

Attorneys for Defendant Antonio Gonzalez

**BROWN, Judge.**

This matter comes before the Court on Defendant Antonio Gonzalez's Motion (#136) to Suppress Evidence.  For the following reasons, the Court **DENIES** the Motion.

BACKGROUND

In a Second Superseding Indictment, the government charges Gonzalez and others with one count of Conspiracy to Import and Distribute Ephedrine in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(viii) and § 846, one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(a)(2)(A) and (h), 53 counts of Money Laundering in violation of 18 U.S.C. § 1956(a)(2)(A), three counts of Importation of Ephedrine in violation of 21 U.S.C. § 960(d)(3), and three counts of Distribution of Ephedrine in violation of 21 U.S.C. §§ 801-971 and 21 U.S.C. § 841(c)(2).

Gonzalez moves (1) to suppress statements he made to law-enforcement officers and to his wife in their presence when he was arrested on November 13, 2009, based on the government's alleged violation of his *Miranda* rights during a custodial

3  - OPINION AND ORDER

interrogation and (2) to suppress evidence seized as a result of this alleged violation.  The government asserts Gonzalez knowingly and voluntarily waived his *Miranda* rights and consented to the searches leading to the seizure of evidence.

**STANDARDS**

**I.    Waiver of *Miranda* Rights.**

The government must prove by a preponderance of the evidence that a suspect in custody "knowingly" and "voluntarily" waived his right to counsel and to remain silent.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  *See also Colorado v. Connelly,* 479 U.S. 157, 168 (1986).  The suspect, however, must unambiguously invoke the right to counsel and to remain silent. *Davis v. United States,* 512 U.S. 452, 459 (1994).  "If the [suspect] makes an 'ambiguous or equivocal' statement or no statement, the police are not required to end the interrogation or ask questions to clarify the [suspect's] intent."  *Berghuis v. Thompkins,* 130 S. Ct. 2250, 2253 (2010).

"Mere silence" by a suspect regarding the invocation of his right to counsel does not, standing alone, constitute a knowing and voluntary waiver of the suspect's right to counsel.  *Butler,* 441 U.S. at 373.  The waiver of right to counsel during police questioning, however, "can be clearly inferred from the actions and words of the person interrogated."  *Id.*  The waiver is

4  - OPINION AND ORDER

voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421 (1986).  If a suspect has been read his *Miranda* rights and his "decision not to rely on his rights [is] uncoerced, . . . the waiver is valid as a matter of law."  *Id.* at 422.  "After giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived *Miranda* rights."  *Berghuis*, 130 S. Ct. at 2254.  Under those circum-stances, "the police [are] not required to obtain a waiver [of the suspect's] *Miranda* rights before interrogating him."  *Id.*

## II.  Consent to Search.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).  "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  *Id. See also U.S. v. Rubio*, 727 F.2d 786, 798 (9th Cir. 1983)("A specific exception to the Fourth Amendment's warrant and probable cause requirements is that a search conducted pursuant to a valid consent is constitutionally permissible.").

## DISCUSSION

On October 15, 2010, the Court held an evidentiary hearing
on Gonzalez's Motion to Suppress at which Special Agents Michael
Williams and Jacob Dye, Department of Homeland Security,
Immigration and Customs Enforcement (ICE); Gonzalez's wife, Gilda
Elisabeth Aguilera Pierre; and Alan Williams, the attorney who
represented both Gonzalez and co-defendant Verlyn Payton in their
business affairs, testified.

## I.  Facts.

The Court finds the following facts were established at the
hearing by a preponderance of the evidence:

In November 2009 Defendants Gonzalez and Payton were in Las
Vegas purportedly to attend a convention billed as the "cutting
edge ingredient show" for "healthy and innovative ingredients."
They were accompanied by their business attorney, Alan Williams,
and Gonzalez's wife, Gilda Elisabeth Aguilera Pierre.

Early in the afternoon of November 13, 2009, the day they
were to depart Las Vegas, Gonzalez, Payton, and Williams went to
the Circus Circus Hotel and Casino.  Gonzalez and Payton were
looking for co-defendants Subhash Naithani, Manoj Jumar Kovvumal,
and Sachin K. Sharma, who failed to show up for a meeting the
night before (and who had already been arrested).  Williams was
with Gonzalez and Payton because he didn't have his cell phone
and he did not want to lose contact with them before they were to

6  - OPINION AND ORDER

leave for the airport.

While in the Circus Circus lobby, Gonzalez and Payton were approached by casually-dressed law-enforcement officers who were part of an investigative team conducting surveillance of Gonzalez and Payton.  The officers asked them to identify themselves. Soon after they complied, Special Agents Dye and Williams arrested and handcuffed both Gonzalez and Payton pursuant to existing arrest warrants from the District of Oregon.  Special Agent Williams asked Payton where his computer was, and Payton said it was in the back of Williams's rental car.  As attorney Williams realized Gonzalez and Payton were being arrested, he identified himself to the agents and asked whether they had a warrant.  Evidently interpreting the question to refer to a warrant about the computer, Special Agent Williams said "No . . . but we can get one."  Attorney Williams nonetheless understood there were arrest warrants for Gonzalez and Payton from the District of Oregon.

As the agents escorted Gonzalez and Payton through the hotel lobby, attorney Williams heard the agents asking hotel personnel whether there was empty office space available that they could use, but Williams did not immediately follow the agents and did not attempt to speak with his clients or the agents.  By the time attorney Williams thought to determine where the agents had taken his clients, they were no longer in sight so Williams turned his

7  - OPINION AND ORDER

attention to locating Gonzalez's wife.

The agents escorted Gonzalez and Payton to separate offices located off the back alley of the hotel.  Special Agent Williams remained with Payton, and Agent Dye stayed with Gonzalez.

Payton immediately chose to cooperate with the agents, answered many questions, and signed several waivers including a *Miranda* form and waiver and consent-to-search forms relating to his computer.  He also was permitted to speak by telephone to his wife and to attorney Williams.[1]

Special Agent Dye interviewed Gonzalez separately.  Although Special Agent Dye's firearm was visible to Gonzalez after he took his jacket off during the interview, there is not any evidence the firearm affected Gonzalez during the interview.  Special Agent Dye read a *Miranda* waiver form to Gonzalez, and Gonzalez then signed it.  After Gonzalez told Special Agent Dye that he (Gonzalez) would call his attorney (Alan Williams) if he had any questions, Special Agent Dye confirmed he would allow Gonzalez to do so if he wished.

Gonzalez also was cooperative and at one point offered to work for the government as an informant.  He also signed multiple

---

[1] It is unclear how telephone contact was established between Payton and attorney Williams in light of the fact that Williams did not have his cell phone.  That ambiguity, however, is not of any benefit to Gonzalez in the absence of any evidence that Gonzalez ever invoked his right to counsel or to remain silent.

consent-to-search forms authorizing the search of his "computer

screen name"; his luggage at the Venetian Hotel and Casino in Las

Vegas where he and his wife were staying; "letters, papers,

materials" and "computer/electronic equipment" located in several

places, including the Venetian and Circus Circus Hotels in Las

Vegas and various premises in San Diego and Chula Vista,

California.  Gov. Mem. in Oppos. to Mot. to Suppress, Exs. C-H.

At some point during the interview, Gonzalez and attorney

Williams spoke on the telephone to make sure Gonzalez's wife was

told what was happening and to track down Gonzalez's luggage.[2]

Sometime thereafter Gonzalez's wife appeared at the hotel

and was able to take the luggage and some currency from Gonzalez.

## II.  Analysis.

The factual and legal issues before the Court are whether

Gonzalez: (1) invoked his *Miranda* rights, (2) waived his *Miranda*

rights by consenting to proceed with a custodial interview

without counsel present "as a free and deliberate choice" (s*ee*

*Berghuis*, 130 S. Ct. at 2254), and/or (3) voluntarily consented

to the searches of his "computer online presence" and his

computer equipment located in Las Vegas and at various locations

in California (*see Schneckloth,* 412 U.S. at 219).

The record as a whole as reflected in the Court's findings

---

[2] Again, it is unclear how that telephone contact was
established, but that ambiguity is not relevant to Defendant's
Motion.

of fact establishes by a preponderance of the evidence that

Gonzalez did not at any time after his arrest or at the beginning

of or during his interview with Special Agent Dye invoke his

right to counsel; did not hesitate to answer questions; and did

not indicate any desire to stop answering any questions so that

his attorney could be present or otherwise consulted.  Moreover,

all of the evidence leads the Court to conclude that Gonzalez

made a knowing, intelligent, and voluntary waiver of his *Miranda*

rights and likewise consented to the described searches.  Indeed,

Gonzalez voluntarily signed a *Miranda* waiver form and freely

consented in writing to the search of his computer that was with

him in Las Vegas and to searches of his luggage in Las Vegas and

computer equipment in multiple locations in California.

### CONCLUSION

For these reasons, the Court **DENIES** Defendant Antonio

Gonzalez's Motion (#136) to Suppress Evidence.

IT IS SO ORDERED.

DATED this 4th day of November, 2010.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

10 - OPINION AND ORDER